## APPEAL OF ISAAC ALBERT, GUARDIAN.

[ESTATE OF GEORGE W. LAHR, A MINOR.]

FROM THE DECREE OF THE ORPHANS' COURT OF NORTHUMBERLAND COUNTY.

Argued May 27, 1889—Decided October 7, 1889.

[To be reported.]

1. Though a guardian, by his careless management of his ward's estate, his keeping no accounts thereof, and his neglect to apply to court for an allowance to his ward, will forfeit all right to compensation, and for the support and maintenance of his ward while a member of his household,

2. Yet where, before the receipt of any of his ward's estate, he has made advances for the support of his ward, while still a child and residing with his mother, the guardian will be entitled to credit for such advances, with interest, although made without an order of court therefor.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

Statement of Facts.

No. 152 July Term 1888, Sup. Ct.; court below, number and term not shown.

On May 4, 1887, Isaac Albert filed a final account as guardian of George W. Lahr, a minor, which on September 8, 1887, was confirmed nisi. In this account the guardian, who was the uncle of his ward, charged himself with various amounts of cash received on and after January 31, 1871, with interest on the items to April 30, 1887, aggregating with $246.61, charged also as received in 1863, and its interest, the sum of $3,552.87. Credit was taken, inter alia, for "board and clothing furnished his said ward, $100," for each year from 1861 to 1874 inclusive, with interest added with each credit to April 30, 1887. Other but small items of credit taken reduced the balance in the accountant's hands, as shown by the account, to $202.46.

A large number of exceptions to the account having been filed by George W. Lahr, now become of age, to items upon both sides of the account, *Mr. Lewis Dewart* was appointed auditor to pass upon the exceptions, and if necessary to state and report an account. On January 21, 1888, the auditor filed a report showing that from the testimony taken he had found the facts following :

1. On January 8, 1861, Isaac Albert was appointed by the Orphans' Court of Northumberland county, guardian of George W. Lahr, a minor child of Daniel Lahr, deceased, born on November 24, 1865, and at the time of his guardian's appointment living with his mother. The minor continued to live with his mother up to some time in 1865, part of this time one half mile below his guardian's house, and afterwards near Lewisburg, in Union county. From the time of the accountant's appointment as guardian, until his ward left his mother's house, his mother was poor and had two other children to support; but part of this time, the evidence did not show what length, one of them, Sophia, lived with the accountant until she died, and Frank the brother lived with his grandfather ; but the evidence did not show, and it was not found as a fact that she was so poor that she could not maintain the ward. During this period Isaac Albert as guardian paid Mrs. Lahr, his ward's mother, for boarding him, and paid for his clothes $100 a year for each

of the years 1861, 1862, 1863, 1864 and 1865. Part of these amounts which he paid to Mrs. Lahr, was paid in money; part for her rent, cook stoves, doctor bills and other things she needed, but the evidence did not show and the auditor could not find how much of this was expended for clothing, what amount was paid to Mrs. Lahr for boarding, or how much given for any other articles specified. The accountant as guardian had no agreement or contract with Mrs. Lahr; took no receipts from her; did not keep any account in his books, or in any other way, of the money paid to her, of bills paid for her, or articles given to her, nor of the money paid for clothing. He did not receive any money belonging to his ward until November, 1863, and this he kept to pay him back for his expenditures; he never applied for or obtained an order of court for an allowance for his ward, did not file an account of these expenditures until the present one, filed in May, 1887, which he was cited to file, which was passed by the register without vouchers, and in which he claimed credit for the above accounts, with interest from each of the specified years, up to April 30, 1887.

2. When the minor was in his eleventh year, sometime in 1865, he left his mother's house and went to live with his guardian, and continued to live with him until he became of age on November 24, 1875. During all this time he never asked his guardian to account; he first requested him to do so five or six years before the account was filed, and then again the fall before. While living with the accountant he was sent to the free schools, once to a subscription school, and was boarded and clothed by the accountant as if he was his own child. His guardian acted the same as a father towards him; and during this time his guardian owned and farmed a farm of about 100 acres on which he lived, was in the lumber business and operated the saw-mill. When he first came to his uncle's house he was not a stout boy, but was stout enough to work, and did work around the barn driving the cattle to and from the fields, hoeing corn, raking hay, picking potatoes, and about the house setting the table, washing dishes, and carrying in wood and water. He continued to do light work of this kind up to 1869, when he sometimes worked at the saw-mill, helped haul logs, and did general farm work. His guardian never paid him any wages for his work, nor did he give him any money as a ward;

he never charged him with anything on his books for his support while he resided in his family; did not keep any account, and never applied for or obtained an order of court for an allowance for the support of his ward. The ward's board and clothing were worth from $50 to $100 per year and his services were worth his boarding and clothing, during the time he lived with his uncle and guardian.

Upon the foregoing facts, the auditor, citing upon the various questions raised before him, Roberts's App., 92 Pa. 421; Duffey v. Duffey, 44 Pa. 402; Horton's App., 94 Pa. 63; Smith's App., 47 Pa. 424; Norris's App., 71 Pa. 126, ruled: That the accountant was negligent in not applying to the Orphans' Court for an allowance for the support of his ward, and that as there was no evidence that the ward's mother was unable to maintain him,* the accountant was to be surcharged with the $100 expended by him in the years 1861 to 1865 inclusive, with the interest charged in the account on those items; that as the evidence showed that from the year 1865 the accountant assumed the relation of parent towards his ward, he could not claim for his expenditures thereafter for the support of the ward, nor could the ward claim for his services during his minority, and he was to be surcharged also with the amounts he had taken credit for, for "boarding and clothing" furnished for those years 1865 to 1874 inclusive; that because of his carelessness in managing his ward's estate, the accountant was not entitled to an allowance by way of compensation for his services as guardian; and, that as there had been laches on the part of the ward, as well as on the part of the accountant, in not having a settlement of his estate at an earlier date, and other circumstances indicating fairness and kindness to his ward on the part of the accountant, the costs of the audit should be paid out of the ward's estate. The auditor thereupon restated an account, surcharging the accountant as before stated, and, disallowing all credits claimed except for the actual expenditures in settling the estate, reported a balance in the accountant's hands due to his ward of $3,286.43.

Exceptions filed by both the accountant and the ward to the

---

* Was his mother obliged to maintain him, if she had been able?

auditor's report having been argued, they were dismissed by the following opinion and decree, CUMMIN, P. J., 29th district, holding special term:

The very careful, complete and able report of the learned auditor, commends itself so generally to the approval of the court, that attention need be called to but few matters.

The accountant claimed one hundred dollars for each of the years 1861–1864, for moneys paid to his ward's mother for his support. The auditor finds that this amount was paid, but disallows it to the guardian upon sufficient grounds. In my opinion the evidence does not justify a finding that such an amount was paid by the accountant. The only evidence in its favor is the testimony of the accountant himself, who says this amount was paid in money, doctor's bills, cook stoves and other things. No receipts are furnished, no accounts shown, no dates given, no values fixed. The unsupported testimony of the accountant is not the best evidence the nature of the case admits of, and in my opinion is insufficient to establish the facts alleged. It falls far short of the kind of proof the court would require to justify subsequent approval of such expenditures, made without an order of the court first had. This view of the court does not change the conclusion arrived at by the auditor, but is an additional reason for its soundness.

The case differs in some vital respects from Simon's Est., 17 W. N. 109, and Simon's App., 19 W. N. 94, where an allowance was made to the guardian. In that case the father left his child in the custody of a stranger who afterwards became its guardian. A promise to pay for such care was inferred from the legal liability of the father to provide the support of his offspring, etc. In the case at bar, the child was kept by its mother for the years named; there was no contract with the guardian, and no evidence that the mother was too poor to support the child. There is however, one point in Simon's Appeal, supra, which fits this case exactly, and it is thus stated by GREEN, J., in delivering the opinion of the court: "We cannot conceive of any reason for imposing upon the ward any part of the costs of this proceeding, the whole necessity for which was created by the default of the guardian."

And now, May 29, 1888, it is ordered, adjudged and decreed, as follows:

1. That the third exception filed on behalf of George Lahr,

be and the same is sustained, and that all other exceptions filed be and the same are overruled.

2. That the amount due from Isaac Albert, guardian, to George W. Lahr, who was his ward, is $3,286.43, with interest from April 30, 1887.

Thereupon the accountant took this appeal, specifying as error the overruling of his exceptions to the auditor's report, and the decree entered, supra.

*Mr. S. P. Wolverton*, for the appellant:

Urging that this cause was to be distinguished from those where the harsh and technical rules of law laid down by the auditor and the court below were applicable, counsel cited and discussed: Brown's App., 112 Pa. 18; Horton's App., 94 Pa. 62; Romig's App., 84 Pa. 235; Mylin's Est., 7 W. 64.

*Mr. W. B. Hilbish*, for the appellee:

A guardian is required to show by competent testimony that he has made the expenditures for which he charges his ward: Romig's App., 84 Pa. 237; Mylin's Est., 7 W. 67; and where he has placed himself in loco parentis with his ward, he cannot be allowed a claim for maintenance, nor can the ward recover for services rendered: Horton's App., 94 Pa. 62; Defrance v. Austin, 9 Pa. 309; Lantz v. Frey, 14 Pa. 201; Duffey v. Duffey, 44 Pa. 401. So, where a guardian who receives money of his ward's estate, keeps no books of account or separate bank deposit thereof, makes no investment for his ward, but mingles his ward's money with his own in his individual account, he is properly charged with interest and deprived of his commissions: Harland's Accounts, 5 R. 323; Norris's App., 71 Pa. 113; and the costs of legal proceedings should be paid by the one who is in default: Simon's App., 19 W. N. 94.

OPINION, MR. JUSTICE GREEN:

The learned auditor in this case found as a fact that the appellant, as guardian of his ward, did pay out the sum of $500, being $100 per annum for five years from 1861 to 1865, both inclusive, for the necessary support and maintenance of his ward during that time. It must be borne in mind that during this period the ward was living with his mother; that he was

a mere child from seven years of age at the beginning to eleven at the end; that the money was actually paid out by the guardian in part to the mother and in part for other necessary expenses; and that the guardian did not place himself in loco parentis with the ward. The auditor has further found that the guardian received no money of the ward during this time, except in 1863, a sum of $246.61, with the whole of which he has charged the guardian, together with interest on it from the day of its receipt. These circumstances cause the case, so far as this one branch of it is concerned, to differ materially from the ordinary cases in which the guardian is held to a strict rule of accountability for not keeping accounts, for not obtaining an order of court for an allowance, and for not keeping vouchers. For this guardian's derelictions in these respects he is duly punished by being denied all compensation for his services, and any recompense whatever for the board and maintenance of his ward after the latter came to live with him, and he had thereby placed himself in the relation of parent to child with the ward. We are satisfied with the findings and rulings of the auditor and court below on this latter branch of the case, and will not interfere with them.

Had the guardian exercised due care for his own interests in these respects, and proceeded under the advice of counsel, doubtless very different results to him would have been obtained; but he was highly derelict in regard to these matters, and he must suffer the consequences indicated by the frequent decisions of this court. He is deprived of all commissions; he is charged with every dollar of money received, together with interest from the time of its receipt; and he is refused all compensation for the support of the ward from the eleventh year of his age to the time of his majority. During a part of that time the services of the ward to the guardian were no doubt a sufficient compensation for his maintenance, but it would be a severe and unreasonable finding to hold that such was the case during the earlier portion of that period. Nevertheless, we hold that the guardian was at fault during the whole of that period, and he must abide by the consequences imposed upon him in the court below.

As to the $500 actually paid out, however, to the mother and others, for the ward's necessary maintenance and expenses from 1861 to 1865, the case is on a different footing. The

guardian could not apply to the Orphans' Court to fix an annual allowance, as there was no estate or money in hand out of which such an allowance could be made. There were no accounts to keep of moneys received, because none were received except the one item in 1863. It is true, the guardian should have taken receipts for his payments, but his omission to do so is not a fatal and absolute bar to any allowance for moneys actually paid out. The proof of the payments in this case was certainly not of the best, but it satisfied the auditor, and we think, in view of the moderate amount allowed, the auditor was correct in his finding. The auditor further finds that the appellant did his entire duty, with strictest uprightness, honesty, and kindness, at all times, in the care, education, and maintenance of his ward, and that his omissions in not observing strict legal rules in the matter of his accounts and vouchers were the result of carelessness only. We think, in view of all the circumstances, the appellant is entitled to credit for his disbursements of $100 per annum during the five years from 1861 to 1865, both inclusive, with interest as claimed in the account, and to that extent the decree of the court below is reversed.

Our treatment of this case is in entire consistence with the views expressed in Simon's App., 19 W. N. 94, and Brown's App., 112 Pa. 18. We do not think it was proper to impose the costs of the audit upon the appellant, as he was not exclusively in fault, but direct, as did the auditor, that they be paid out of the fund.

> The decree of the court below is reversed, at the cost of the appellee, and the record is remitted, with instructions to restate the account of the appellant as guardian in accordance with this opinion.

On October 15, 1889, the following decree was filed:

Now, to wit, October 15, 1889, the decree heretofore made on the 7th October, 1889, is amended so as to read as follows, viz.:

> The decree of the court below is modified so as to stand as a decree against the accountant for $2,086.43, and, as so amended, the decree is affirmed, the costs of this appeal to be paid by the appellee.